UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANGELA K.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:21-cv-088

Barrett, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Angela K. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents multiple claims of error for this Court's review. The undersigned concludes that the Commissioner's finding of non-disability should be REVERSED because it is not supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

On August 7, 2018, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging she became disabled on February 1, 2018, based upon a combination of diabetes, neuropathy, anxiety and depression. (Tr. 74). After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On April 9, 2020, Plaintiff appeared with counsel by

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

1

telephone and gave testimony before ALJ Renita Bivins; a vocational expert ("VE") also testified. (Tr. 38-73). On April 29, 2020, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. (Tr. 12-32). The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff was 53 years old on her alleged disability onset date, but had changed to the "advanced age" category, at age 55, by the date of the ALJ's decision. (Tr. 31). She testified to a high school education and some college, and previously worked in a semi-skilled position as a retail sales clerk, performing that position at varying exertional levels from light up to the heavy exertional level. (Tr. 30). She lives with her husband and daughter.

The ALJ determined that Plaintiff has severe impairments of "peripheral neuropathy; epilepsy; diabetes mellitus; major depressive disorder; generalized anxiety disorder; coronary artery disease without angina pectoris; status post myocardial infarction with coronary stent placement; and cannabis use disorder." (Tr. 14). The ALJ also noted that Plaintiff has been diagnosed with rash, tobacco dependency/nicotine use disorder, obesity, menopause, headaches, hypercholesterolemia, and has a history of alcohol use, but that none of those impairments resulted in limitations in functioning. (*Id.*) Based on the record, the ALJ determined that Plaintiff's drug and alcohol use were "not material to the determination of disability." (Tr. 15). Considering Plaintiff's impairments individually and in combination, the ALJ determined that none met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)

Plaintiff challenges the ALJ's failure to address her chronic pain and obesity as severe impairments. Additionally, she challenges the ALJ's assessment of her residual functional capacity ("RFC"). The ALJ determined that Plaintiff could perform work at the medium exertional level, subject to the following limitations:

> except the claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently; and able to stand and/or walk for 6 hours per 8 hour day and sit for 6 hours per 8 hour day with normal breaks. The claimant can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can frequently stoop, kneel, crouch and crawl; and can frequently handle, feel, and finger. The claimant must avoid all exposure to unprotected heights of ladders, ropes or scaffolds, commercial driving and operating heavy machinery. The claimant can maintain attention and concentration and sustain persistence and pace to complete simple task and detailed task, but no complex task. The claimant can interact with the public, coworkers and supervisors on a superficial basis, meaning casual contact with brief conversations but allowing the necessary interaction to obtain instruction from supervisors. The claimant can adapt to a setting where duties have no requirement to frequently shifting to a large variety of unrelated duties, frequently going from one task to another task.

(Tr. 19).

Based upon her RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could not perform her prior work but still could perform other jobs that exist in significant numbers in the national economy, including representative occupations such as a counter supply worker; an assembler; and a hospital cleaner. (Tr. 31). Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 32).

Plaintiff argues that reversal is required based upon the following errors: (1) the ALJ erred in defining "superficial contact," (2) the ALJ committed factual error and was overly selective in her assessment of Plaintiff's daily activities and medical records; (3) the ALJ erred in failing to limit Plaintiff to light or sedentary work based upon her obesity, chronic pain and December 2019 heart attack; (4) the ALJ erred in evaluating her subjective complaints; and (5) the ALJ erred by failing to include all relevant RFC

3

limitations in the hypothetical posed to the vocational expert. The undersigned concludes that portions of the first and third errors require remand for additional review at the administrative level.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

4

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims**

**1. The ALJ's Definition of Superficial Contact**

Plaintiff's first claim challenges the mental RFC limitation to "superficial" interactions with "the public, coworkers and supervisors," which the ALJ defined as

5

"casual contact with brief conversations but allowing the necessary interaction to obtain instruction from supervisors." (Tr. 19). Plaintiff assumes that the ALJ assessed this limitation based upon the opinion of a consulting psychologist who, at the reconsideration level, opined that "the claimant's ability to handle public contact would be reduced, but adequate to handle brief, infrequent and superficial contact; the claimant's ability to cope with co-workers and supervisors would be adequate for brief superficial contact." (Tr. 28; *see also* Tr. 86, 103). The Commissioner agrees that the ALJ "*seemingly* adopted the findings of the state agency psychologists." (Doc. 11 at 4, citing Tr. 85, 102) (emphasis added).

Unfortunately, neither the parties nor the undersigned can determine the ALJ's basis for the "superficial" limitation portion of the mental RFC with certainty, because the ALJ discussed the two psychological consulting opinions without expressly articulating whether she found those opinions to be persuasive, supportable or consistent with the record. Regulations applicable to this case require the ALJ to "articulate in [the] determination or decision how persuasive" each medical opinion is that is included in the case record. *See* 20 C.F.R. § 404.1520c(b). Another regulation states that an ALJ "must consider" medical findings of non-examining state agency consultants. *Gower v. Saul*, 2020 WL 1151069, at * 4 (W.D. Ky, March 9, 2020) (citing 20 C.F.R. § 404.1513a(b)(1)). In considering the persuasive value of each opinion, an ALJ must consider five factors and expressly discuss the "most important" factors of supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2).

Assuming that the ALJ found the agency psychological opinions to be persuasive, Plaintiff complains that the ALJ erred by failing to include the consultant's limitation to

6

"infrequent" contact with the public in addition to the "superficial" restriction.[2] Plaintiff further argues that the ALJ erred by defining "superficial" contact as "casual contact with brief conversations." In Plaintiff's view, "superficial" contact is more restrictive as to the "quality" of contacts and would preclude all three jobs to which the VE testified. (Doc. 8 at 3-4). But the undersigned rejects the assertion that the ALJ erred in defining "superficial" contact, because neither the DOT nor controlling case law defines the meaning of that term. In this respect, the undersigned finds persuasive *Stoodt v. Com'r of Soc. Sec.*, 2022 WL 721455, at *17 (N.D. Ohio Jan. 13, 2022), adopted at 2022 WL 716105 (N.D. Ohio March 10, 2022) (discussing cases); *see also Beulah v. Com'r of Soc. Sec.*, 2022 WL 1609236, at *31 (N.D. Ohio March 25, 2022) (holding that the term "superficial" does not have a defined meaning for purposes of vocational testimony); *but contrast Dawn M. v. Commissioner of Social Security*, 2022 WL 2037804, at *7 (S.D. Ohio June 7, 2022) (holding that the term "superficial" "is a well-defined limitation in the Social Security context.").

All is not lost for Plaintiff, though, because *Stoodt* supports remand for other reasons. There, a consulting psychologist limited plaintiff to "brief, superficial interactions," and the Commissioner argued that the RFC was consistent with that opinion. But the court noted that it was "not clear from the record what specific manner of communications the psychological consultants intended." *Id.* at 17. Because the ALJ offered no relevant analysis, the court also could not determine

> whether the interaction limitations adopted by the ALJ were consistent with
> or in conflict with the interaction limitations described in the state agency
> psychological consultant opinions. Because the ALJ also did not offer any

---

[2]Plaintiff also asserts that the ALJ failed to include a restriction to "brief" contacts; however, the hypothetical clearly indicated that contacts were limited to "brief conversations," and the VE opined that a limitation to "[c]asual, brief conversations" would eliminate past work. (Tr. 67-68).

7

>explanation for her divergence from the specific findings in those opinions consistent with SSR 96-8p, she failed to build a logical bridge between the evidence and the RFC.

*Stoodt*, 2022 WL 721455, at *18.

Even more so than in *Stoodt*, remand is required in this case based on the failure to build a logical bridge between the evidence and the RFC as determined. In *Stoodt*, the ALJ had at least stated that the consulting opinion was "persuasive." Here, the ALJ's failure to articulate whether the consulting opinions were persuasive means it is impossible to discern: (1) whether the ALJ intentionally left off the limitation to "infrequent" contact with the public; (2) the basis for her definition of "superficial" contacts; and/or (3) whether the referenced limitation was based on the psychological consulting opinions at all. "[W]here… the record contains no opinion that the ALJ found persuasive which supports the non-disability finding, faithful adherence to the 'articulation' requirement of the new regulations is vital to maintaining the guarantee of the rule of law." *Hardy v. Commissioner of Social Security*, 554 F.Supp.3d 900, 908 (E.D. Mich. 2021).

"[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Com'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (citations omitted). On the record presented in this case, the ALJ's articulation error cannot be viewed as harmless, because the inclusion of additional or different restrictions is likely to have altered the VE's testimony. *Accord Rachel B. v. Com'r of Soc. Sec.*, 2022 WL 815295, at *5 (S.D. Ohio March 16, 2022) (remanding for further review and compliance with new articulation standard).

8

**2. The ALJ's Evaluation of Obesity and Other Impairments**

Plaintiff argues in her third claim of error that the ALJ erred: (1) in failing to adequately consider her obesity or chronic pain; and (2) in failing to note that Plaintiff suffered a heart attack in December 2019, *after* the state agency consulting physician reviewed the medical evidence on reconsideration.[3] The undersigned finds reversible error in the evaluation of Plaintiff's obesity, and therefore finds no need to reach Plaintiff's additional arguments concerning the evaluation of Plaintiff's chronic pain and heart attack.

Plaintiff argues that obesity, in combination with other impairments including peripheral neuropathy, chronic pain and her December 2019 heart attack, would greatly limit her abilities to perform medium level work. Indeed, her primary care physician opined that Plaintiff was capable of no more than sedentary work. If the ALJ had limited Plaintiff to either light or sedentary work instead of medium work, she would have been entitled to a presumption of disability under applicable Grid Rules

In determining that Plaintiff could perform work at the medium exertional level, the ALJ appears to have relied (at least indirectly) upon a May 2019 assessment by a non-examining consulting physician, Dr. McKee, who determined that Plaintiff could perform some medium level work with additional restrictions. The ALJ summarized Dr. McKee's assessment, (Tr. 28; Tr. 98-101), which was more restrictive than that of another consulting physician, Dr. Torello, on initial review. (*See* Tr. 82-84).[4] But neither Dr. Torello nor Dr. McKee found Plaintiff's obesity to be a medically determinable impairment.[5] (*See*

---

[3] Although the ALJ did not include either obesity or chronic pain among Plaintiff's severe impairments at Step 2, she did include "coronary artery disease without angina pectoris and status post myocardial infarction with coronary stent placement" at Step 2.
[4] Dr. Torello assessed no exertional limitations at all.
[5] SSR 02-1p states that "in the absence of evidence to the contrary in the case record, we will accept a diagnosis of obesity" as a medically determinable impairment. *Id.*, 2002 WL 34686281, at *3.

9

Tr. 79, 95). In addition, based upon the fact that Plaintiff did not experience a heart attack until December 2019, neither Drs. Torello or McKee listed or considered that impairment in evaluating Plaintiff's physical RFC.

Like her analysis of the psychological consulting opinions, the ALJ's analysis of Dr. McKee's opinions does not include articulation of their "persuasiveness." Nor did the ALJ elaborate upon the supportability or consistency factors of Dr. McKee's opinions.[6] Nevertheless, it is clear that the ALJ indirectly relied upon Dr. McKee's RFC opinions insofar as she found "persuasive" the opinions of a medical reviewer, Kumar Swami, M.D., who completed a check-box form dated June 6, 2019, expressing full agreement with Dr. McKee's opinions. (Tr. 29; Tr. 1139-40).[7]

Remand is recommended for further consideration of obesity. Plaintiff's obesity is consistently noted throughout her medical records, with a BMI above 37 (Class II obesity) at all relevant times, and at least at one time above 40 (Class III, the most severe classification). (*See e.g.,* Tr. 318, 333, 380, 560, 640, 717, 777, 815, 929, 944, 959, 971, 1041, 1166, 1231, 1261, 1309, 1329, 1614). The ALJ barely mentioned Plaintiff's obesity at Step 2, finding it to be a medically determinable impairment among a list of impairments that were "generally well controlled." (Tr. 14). Considering that Plaintiff's weight gradually increased with a corresponding increase in her BMI from 37.67 to 40.05, it is difficult to understand the rationale for finding the obesity to be "well controlled." The ALJ also found at Step 2 that Plaintiff's obesity was not a severe impairment because it did not result "in

---

[6]The ALJ completely omitted discussion of Dr. Torello's differing opinions.
[7]Unlike Dr. McKee who did not reference Plaintiff's obesity, Dr. Swami noted that Plaintiff "was obese with BMI of 37+." (Tr. 1140). Despite that acknowledgement, it is unclear whether Dr. Swami considered Plaintiff's obesity under SSR 02-01p. And because Plaintiff's heart attack occurred after his review, Dr. Swami could not have considered that severe impairment.

significant or disabling symptoms or limitations in functioning." (Tr. 14). However, the increase in Plaintiff's obesity appears to have corresponded with diagnoses of additional impairments such as Diabetes Mellitus Type II, peripheral neuropathy, hypercholesterolemia and heart attack, all of which are associated with obesity.[8]

The Defendant argues that any error in the failure to find Plaintiff's obesity (or chronic pain) to be a severe impairment at Step 2 was harmless because the ALJ considered those impairments when she progressed through the sequential analysis after finding other severe impairments. *See Muziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987). The undersigned disagrees. At the time Plaintiff filed her application, Social Security Ruling 02-1p provided specific guidance for the evaluation of obesity, and there is no evidence that the ALJ followed that guidance in this case.[9] As explained by SSR 02-1p:

> Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. …Obesity increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus…heart disease; peripheral vascular disease; …and other physical impairments. Obesity may also cause or contribute to mental impairments such as depression.

*Id.*, Evaluation of Obesity, 2002 WL 34686281, at *3.

It goes without saying that obesity is an extremely common diagnosis. Many obese people are fit and otherwise healthy, with no physical or mental limitations that impact their ability to work fulltime. Nevertheless, pursuant to 02-01p:

> An ALJ must "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of*

---

[8]*See, e.g.*, "Diabetes and obesity are the main metabolic drivers of peripheral neuropathy" https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5899909 accessed on June 29, 2022.
[9]Effective May 20, 2019, SSR 19-2p, 2019 WL 2374244, replaced SSR 02-1p regarding the evaluation of obesity.

11

>*Soc. Sec.,* 359 Fed. Appx. 574, 577 (6th Cir. 2009). "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02–1P, 2002 WL 34686281, at *2. It must be considered throughout the ALJ's determinations, "including when assessing an individual's residual functional capacity," precisely because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02–1p, 2002 WL 34686281, at *1

*Shilo v. Com'r of Soc.Sec.*, 600 Fed. Appx. 956, 959 (6th Cir. 2015). While an ALJ is not required to use any "particular mode of analysis" in assessing the effect of obesity, see *Bledsoe v. Barnhart,* 165 Fed. Appx. 408, 411-12 (6th Cir. 2006), an ALJ must do more than simply "mention the fact of obesity in passing." *Shilo*, 600 Fed. Appx. at 959.

At Steps 4 and 5, in assessing functional capacity, SSR 02-1p explains that an obese individual "may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling," and that obesity "may also affect ability to do postural functions…." *Id,* 2002 WL 34686281, at *6. The ruling warns that the effects of obesity "may not be obvious," and that "[i]n cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity" over time. *Id.* Obesity-related fatigue and the inability to sustain physical work activity over time (stamina) may not always be reflected in routine examination findings.

On the record presented, the ALJ's analysis fell short of compliance with SSR 02-01p. Plaintiff testified that she seldom leaves her home and that her physical activities are limited due to a combination of mental and physical impairments. Her primary care physician opined that she is unable to stand or walk for prolonged periods based on her neuropathic pain and "muscle fatigue." In discounting that opinion, the ALJ heavily stressed records in which Plaintiff was found to have a normal gait and normal muscle strength on routine examination. In addition, the ALJ cited one record in which Dr. Ushupun noted that the claimant was reportedly a current every day smoker; drinking 6-

12

8 cans of beer per weekend; not on diabetes medication; and eating junk food late at night and all day on the couch watching TV" with "no indications that the claimant had any physical limitations." (Tr. 29). But other than the brief references to Plaintiff's BMI in the summary of medical evidence, the ALJ never discussed the impact of Plaintiff's obesity beyond Step 2. "[T]his Court has required the Commissioner to conduct at least *some* analysis for claimants with obesity." *Shanna W. v. Com'r of Soc. Sec.,* 2022 WL 1590821, at *3 (S.D. Ohio May 19, 2022) (emphasis added).

The Commissioner suggests that this Court should infer that the ALJ complied with SSR 02-01p[10] based on her reference to Plaintiff's BMI scores and her finding that Dr. Sami's RFC opinions were persuasive. But the inclusion of passing references to Plaintiff's BMI in the medical summary, without discussion, offers no hint that the ALJ actually considered the impact of Plaintiff's obesity as required. And, while it is true that Dr. Swami noted obesity, (*see* Tr. 1140), it is not clear that he considered that diagnosis under SSR 02-01p. Instead, he merely "affirmed" on a check-box form the findings of a consulting physician who did not recognize obesity as a medically determinable impairment.[11] (Doc. 11 at 10). Therefore, the record presented does not allow this Court to presume compliance with SSR 02-1p. *Accord, Shanna W.*, 2022 WL 1590821, at *4 (reversing based upon the ALJ's failure to address obesity pursuant to SSR 02-1p).

### 3. Remand for Further Consideration Rather than Reversal is Appropriate

Plaintiff argues that evidence of disability is so strong that this Court should reverse and award benefits. The undersigned disagrees and instead recommends remand

---

[10]The ALJ cited to and discussed many social security rulings other than SSR 02-01p.
[11]Additionally, because Plaintiff's heart attack occurred after his review, Dr. Swami could not have considered that severe impairment.

13

pursuant to Sentence Four of § 405(g) for further proceedings. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Faucher*, 17 F.3d at 176.

### 4. Other Alleged Errors

As stated, the undersigned recommends remand for additional review. While Plaintiff raises many other issues including but not limited to the assessment of her daily activities, her alleged chronic pain, and her heart attack, the undersigned declines to address additional issues in the interests of judicial economy. However, because the errors discussed may impact the analysis of both subjective complaints and of opinion evidence, as well as the final determination of Plaintiff's RFC, the ALJ is encouraged to reconsider all relevant issues on remand.

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** the decision of the Commissioner be **REVERSED** and **REMANDED** for further consideration under Sentence Four. Due to legal error, the decision is not supported by substantial evidence.

14

                                                    *s/Stephanie K. Bowman*
                                               Stephanie K. Bowman
                                               United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ANGELA K., | Case No. 1:21-cv-088 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).